**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **LLOYD J. GUSMAN, JR.** | * | **CIVIL ACTION NO. 20-984** |
| | * | |
| **VS.** | * | **SEC. I(1)** |
| | * | |
| **ARCHER SHIPPING, LTD., KIRAN INTERNATIONAL HOLDING COMPANY, LTD., and KIRAN HOLDING AS** | * * * * | **JUDGE LANCE M. AFRICK** **MAG. JUDGE van MEERVELD** |

**********************************

**OPPOSITION TO MOTION TO EXCLUDE PLAINTIFF'S LIABILITY EXPERT, ROBERT E. BORISON**

**MAY IT PLEASE THE COURT:**

Plaintiff, Lloyd J. Gusman, Jr., respectfully submits this Memorandum in Opposition to the Motion to Exclude Plaintiff's Liability Expert, Robert E. Borison filed by Defendant, Archer Shipping, Ltd. ("Archer" and/or "Defendant").[1] Archer contends that the May 6, 2021 report[2] and related testimony of plaintiff's liability expert, Borison, should be excluded from the trial of this matter as same is unreliable and unhelpful. Despite Defendant's assertions, however, Borison's opinions and anticipated testimony are based on sufficient facts, data, and specialized knowledge. Borison has extensive maritime and marine safety experience and knowledge, and his expert report lists multiple different documents that he reviewed and considered in preparing his report and rendering his opinion. Borison also references specific facts, testimony, photographic evidence, and circumstances upon which he bases his opinions, setting forth customs and standards in the maritime industry. Moreover, in his investigation and analysis of the accident, Borison used widely

[1] Rec. Doc. No. 47.
[2] *See* May 6, 2021 Expert Report of Robert E. Borison, attached hereto as Exhibit A.

recognized and accepted accident investigation analysis principles and methods. Accordingly, it is clear there are sufficient grounds to establish the reliability of Borison's opinion. Furthermore, Borison's testimony is not "unhelpful" but is sufficiently relevant and tied to the facts of this case such that it can aid the Court in resolving this dispute at trial. For the foregoing reasons, Borison's expert opinion and testimony are admissible pursuant to Federal Rule of Evidence 702, and this Motion should be denied.

## FACTUAL BACKGROUND

### I. The Subject Accident

Regarding factual background pertinent to this motion, Mr. Gusman adopts the factual background provided in his opposition to Archer's motion for summary judgment as if copied herein *in extenso* as well as the exhibits referenced in support of same.

### II. Report of Robert E. Borison

On May 6, 2021, Robert Borison prepared a report that sets forth three opinions relating to the subject accident.[3] Specifically, Borsion opined the following:

1. It is my opinion based on my education, training, and experience that Mr. Ciftici failed to establish a protocol between the *KIRAN BOSPHOROUS'* supervisors and crew and the supervisors and crew of the *C/B ELISA A* to address the housekeeping activities of cleaning the deck of the Urea after the various hatches were unloaded, and before members of the longshoring crew boarded the vessel to move the crane barge.

2. It is my opinion based on my education, training, and experience that the supervisors of the *KIRAN BOSPHOROUS* failed to clean the deck of their vessel, or have it cleaned, before allowing the crew from the *C/B ELISA A* to walk/work on the deck full of a slippery foreign substance. Before he fell, Mr. Gusman testified that he had asked his supervisor to see if someone could clean the deck. The supervisor then asked someone on the ship to clean the deck but was ignored.

3. It is my opinion based on my education, training, and experience that the officers and/or crewmembers aware of the slipping hazard on the deck of the *KIRAN BOSPHOROUS*, and the supervisors of the *C/B ELISA A*, should have used their

[3] *See* May 6, 2021 Expert Report of Robert E. Borison, attached hereto as Exhibit A.

> STOP WORK AUTHORITY and stop this job when it was determined that a foreign substance was present on the deck during the moving of the *C/B ELISA A* using the barge's shifting cables. Both sets of officers/supervisors were aware that the barge had to be shifted using the shifting cables to gain access to another hold. This, of course, meant that certain crewmembers were going to be required to negotiate the ship's deck by the various deck fitting used to position the barge next to the ship. This deck area was not cleaned before ordering Mr. Gusman and other crewmembers to move the shifting cables. By not cleaning the deck, both sets of supervisors exposed these men and Mr. Gusman to known slipping hazards resulting in Mr. Gusman's accident.[4]

Contrary to Archer's assertions that he relies on inaccurate information to form the aforementioned opinions, Borison references specific facts, testimony, photographic evidence, customs, and standards that support same. Specifically, his opinions are supported by what is customary in the maritime industry as well as deposition testimony and photographic evidence adduced in this matter to date. Melih Ciftci, testified that the vessel's crew is supposed to keep the deck clean.[5] Mr. Gusman expressed concern to his supervisor regarding cargo on the ship's deck, and his supervisor in turn asked a member of ship's crew to clean same.[6] This request was ignored[7] despite Ciftici's testimony that if a vessel crewmember is asked to clean the deck of loose cargo, he would expect that crewmember to do so.[8]

Ciftici also testified that the specific walkway area where Plaintiff fell was supposed to be clean of cargo.[9] When the vessel crew failed to clean the urea from the deck as requested, Plaintiff had no choice but to walk through the loose cargo in order to perform his duties.[10] He was unable

---

[4] *See* May 6, 2021 Expert Report of Robert E. Borison, attached hereto as Exhibit A.
[5] *See* Excerpts from the deposition of Chief Officer Melih Ciftci, attached hereto as Exhibit B, p.32:18-19; 33:1-14; 53:20-25.
[6] *See* Excerpts from deposition of Lloyd Gusman, attached hereto as Exhibit C, p. 96:7-25.
[7] *See* Excerpts from deposition of Lloyd Gusman, attached hereto as Exhibit C, p. 96:7-25.
[8] *See* Excerpts from the deposition of Chief Officer Melih Ciftci, attached hereto as Exhibit B, p.57:16-25.
[9] *See* Excerpts from the deposition of Chief Officer Melih Ciftci, attached hereto as Exhibit B, p.55:2-23 and Exhibit 1 thereof.
[10] *See* Excerpts from the deposition of Roy Brupbacher, attached hereto as Exhibit D, p. 24-25.

to avoid same.[11] Had Mr. Gusman disobeyed his supervisor's order to work, he would have been: (1) fired; (2) taken off the schedule; or (3) sent home.[12] Clearly, there are sufficient grounds to establish the reliability of Borison's opinions.

Defendant also alleges that Borison's testimony should be excluded as he does not possess the requisite background or expertise to render an opinion in this matter. This allegation is baseless. At the outset of his opinion, Borison states that he has over 50 years of safety experience in the marine industries related to, among other things, safety issues on barges and vessels/boats (ship, MODU, tug, tow, supply, crew, etc.).[13] He further states that in forming his opinion, he used widely recognized and accepted accident investigation analysis principles and methods in his investigation and analysis of the accident.

Accordingly, contrary to Defendant's assertions, Borison is qualified to render the aforementioned opinions in this matter and same will be helpful to this Court as the trier of fact. Therefore, Borison should not be precluded from testifying, and offering his opinions at the trial of this matter.

## LAW

### I. General law regarding the admissibility of Expert Witness Testimony

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony.[14] Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

[11] *See* Excerpts from the deposition of Roy Brupbacher, attached hereto as Exhibit D, p. 24-25.
[12] *See* Excerpts from the deposition of DeJaunte Murray attached hereto as Exhibit E, p. 15-16.
[13] *See* May 6, 2021 Expert Report of Robert E. Borison, attached hereto as Exhibit A.
[14] *Matter of M& M Wireline & Offshore Services, LLC*, 2017 WL 4806032017 (E.D. La. 2/3/17) citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[15]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[16] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[17] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[18]

A court's role as a gatekeeper does not replace the traditional adversary system,[19] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[20] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[21] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[22]

---

[15] *Id.* citing Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).
[16] *Id.* citing *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).
[17] *Id.* citing *Kumho Tire*, 526 U.S. at 152.
[18] *Id.* citing *Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.
[19] *Id.* citing *Daubert*, 509 U.S. at 596.
[20] *Id.* citing Fed. R. Evid. 702 advisory committee's note to 2000 Amendments.
[21] *Id* citing *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).
[22] *Id.* citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## II. <u>This case is set for a bench trial</u>

It is important to note, that this matter is a bench trial, and despite the foregoing, numerous courts within the District have noted or generally held that in cases tried to the bench "the objectives of Daubert are no longer implicated." See, e.g., *Ybarra v. Int'l Shipholding Corp*., C.A. No. 17-7431, 2019 U.S. Dist. LEXIS 82965, at *4 (E.D. La. Mar. 22, 2019) (Zainey, J.); *Lewis v. Galliano Marine Servs.*, C.A. No. 19-7878, 2020 U.S. Dist. LEXIS 135892, at *2 (E.D. La. 2020); *Thompson v. Rowan Cos.*, C.A. No. 06-3218, 2007 U.S. Dist. LEXIS 15822, at *3 (E.D. La. Mar. 6, 2007); *Carter v. Hornbeck Offshore Transp., LLC*, C.A. No. 12-1545, 2014 U.S. Dist. LEXIS 87099, at *2 (E.D. La. June 26, 2014); *St. Joseph Abbey v. Castille*, C.A. No. 10-2717, 2011 U.S. Dist. LEXIS 59511, at *2 (E.D. La. June 3, 2011); see also *Doe v. Vermilion Parish School Bd*., C.A. No. 09-1565, 2010 U.S. Dist. LEXIS 158822, at *2 (W.D. La. Feb. 1, 2010) ("*Daubert* objections are rarely granted in bench trials.") Indeed, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs,* 210 F.3d 491, 500 (5th Cir. 2000). "*Daubert* requires a binary choice -- admit or exclude -- and a judge in a bench trial should have discretion to admit technical evidence, though of course he must not give it more weight than it deserves." *Thompson v. Rowan*, C.A. No. 06-3218, 2007 U.S. Dist. LEXIS 15822, at *1 (E.D. La. Mar. 6, 2007) (citation omitted). Even within the confines of Daubert, "[t]rial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). There is no need to engage in an extensive *Daubert* analysis given the fact this is a bench trial. This Court is more than capable of sifting through the expert testimony and disregarding or discrediting testimony that it finds too

speculative or lacking scientific basis. It is similarly well equipped to evaluate and weigh the expert testimony offered by Borison after hearing it at trial.

## III. <u>Defendant's Motion asks this Court to prematurely weigh evidence and testimony, which is improper under *Daubert*.</u>

Defendant's challenges go to the weight, not the basis, of Borison's opinions. Such challenges are not permissible under *Daubert*. *See St. Joseph Abbey*, 2011 U.S. Dist. LEXIS 59511, at *1. "[T]he reliability of data underlying an expert's opinion goes to the weight of this evidence but should not serve as a basis for its exclusion." *In re Katrina Canal Breaches Consol. Litig.,* C.A. Nos. 05-4182, 10-866, 2012 U.S. Dist. LEXIS 135556, at *1 (E.D. La. Sept. 20, 2012) (citing Tyler v. Union Oil Co. of. Cal., 304 F.3d 379, 392–93 (5th Cir. 2002)). "Courts should not [be] lured by arguments disguised as Daubert challenges that actually attack the weight of the expert testimony, not its admissibility.*" General Electric Capital Business Asset Funding Corp. v. S.A.S.E. Military Ltd.,* C.A. No. 03-189, 2004 U.S. Dist. LEXIS 30714, at *5 (W.D. Tex. Oct. 21, 2004).

Furthermore, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Id*. (citation omitted). Even further, numerous courts have held that "*Daubert* motions primarily based on attacks concerning the underlying facts are less than compelling in the context of a non-jury trial such as this." *Carter*, 2014 WL 2898458, at *1.

In *Matter of M& M Wireline & Offshore Services, LLC*, 2017 WL 4806032017 (E.D. La. 2/3/17), the Court addressed the very same issue as the one presented herein- a "Motion to Exclude the Report and Prospective Testimony of Robert Borison."[23] Plaintiff Beaux Cormier ("Cormier") was employed by Defendant M&M Wireline & Offshore Services, LLC ("M&M Wireline") as a

---

[23] *Matter of M& M Wireline & Offshore Services, LLC*, 2017 WL 4806032017 (E.D. La. 2/3/17).

deckhand on the M/V M&M 102.[24] Cormier stated that on November 30, 2014, he was transported from a platform in the Grand Bay Field to the nearby M/V M&M 102 by a "Jon Boat" owned and/or operated by Defendant Saratoga Resources, Inc. ("Saratoga").[25] According to Cormier, the operator of the Jon Boat positioned the boat so that the front of the Jon Boat was near and/or pushed up against the side of the M/V M&M 102.[26] When Cormier attempted to step up onto the deck, he alleges that the Jon Boat backed away from the M/V M&M 102, requiring Cormier to jump back onto the Jon Boat.[27] As a result, Cormier lost his balance and landed partially on the Jon Boat and partially in the water, causing injuries.[28] Cormier alleged that the Jon Boat was not secured to the M/V M&M 102 in any way, nor were there other mechanisms in place to allow for safe ingress and egress to the M/V M&M 102.[29] Cormier further alleged that at the time of his accident, the M/V M&M 102 was a vessel owned and operated by M&M Wireline and engaged in operations by Saratoga (collectively, "Defendants").[30] Cormier argued that Defendants were liable to him for the injuries caused by their negligent acts and for failing to provide seaworthy vessels.[31] Defendants argued that any injury Cormier sustained resulted solely from Cormier's own fault, and that Cormier's alleged back injury pre-existed the incident at issue in this litigation.[32]

M&M Wireline filed a motion to exclude the prospective testimony of Cormier's designated expert on marine operations and safety, Robert E. Borison ("Borison") on three grounds: (1) Borison's opinions were not based on any scientific, technical, or specialized

[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*

knowledge; (2) Borison's testimony was within the common experience and knowledge of a lay factfinder; and (3) Borison improperly referenced an OSHA regulation.[33] First, M&M Wireline argued that Borison's report consists of "unfounded and unsubstantiated opinions" not based on any analysis, factual support, or scientific, technical, or specialized knowledge.[34] However, in finding that Borison's expert testimony was based on sufficient facts, data, and specialized knowledge, and thus admissible under Rule 702, the Court noted that Borison's proposed testimony appeared to be founded on his extensive ***maritime and marine safety experience and knowledge***, and that his expert report listed fourteen different documents that Borison "reviewed in preparation for this report."[35] While M&M Wireline asserts that Borison "simply list[ed] the depositions and documents that he reviewed," the Court noted that Borison referenced specific facts, testimony, photographic evidence, and circumstances upon which he supported his opinions.[36] Moreover, though the expert report did not provide extensive detail as to how Borison used or relied on the Job Safety Analysis and Root Cause Analysis, the report stated that Borison used those "widely recognized and accepted accident investigation analysis principles and methods" in his investigation and analysis of the accident.[37] The Court further noted that M&M Wireline's objection to Borison's testimony was precisely the sort that is best addressed through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[38] A court's role as a gatekeeper does not replace the traditional adversary system, and "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[39]

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.* citing *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).
[39] *Id.* citing *Daubert*, 509 U.S. at 596; *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

The Court specifically referenced another case wherein a motion to exclude Borison from testifying was denied. In *Lewis v. Chet Morrison Contractors, LLC*, the Court denied a motion to exclude Borison from testifying, finding, *inter alia*, that arguments that Borison's expert conclusions were unfounded from the evidence he reviewed only affected the weight assigned to the opinions, rather than their admissibility.[40] Because cross-examination would effectively served M&M Wireline's ultimate purposes, and because questions relating to the bases of an expert's opinion generally go to the weight, rather than the admissibility, of an expert opinion,[41] the Court found there were sufficient grounds to establish the reliability of Borison's own opinions.[42]

Second, M&M Wireline argued that Borison's opinions and testimony should not be admitted because they were within the factfinder's common experience and knowledge contending that the "simple facts" involving "common sense safety hazards aboard vessels" were all "within the understanding of any fact-finder." Again, the Court examined *Lewis v. Chet Morrison Contractors, LLC*, wherein the Court found that Borison's testimony as a safety expert involving a plaintiff tripping on a catwalk of a barge would assist the factfinder and was thus admissible under Rule 702.[43] The Court found Borison's testimony sufficiently relevant and tied to the facts of the case such that it could aid the factfinder in resolving the dispute.[44] Accordingly, the Court found that Borison's expert testimony was based on sufficient facts, data, and specialized knowledge and would be helpful to the fact finder and was

---

[40] *Id.* citing *Lewis v. Chet Morrison Contractors, LLC,959* F. Supp. 2d 962 (E.D. La. 2013) (Brown, J.) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir. 1987)).
[41] *Id.* citing *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).
[42] *Id.*
[43] *Id.* citing 959 F. Supp. 2d 962 (E.D. La. 2013) (Brown, J.) (citing *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)).
[44] *Id.* citing *Lee v. Cent. Gulf Towing, L.L.C.*, No. 04-1497, 2005 WL 6773727, at *2 (E.D. La. Aug. 1, 2005) (Duval, J.) (stating that whether proposed expert testimony will assist the factfinder "goes primarily to the issue of relevancy" and is determined by whether the proffered testimony "is sufficiently tied to the facts of the case.")

thus admissible under Rule 702, and that M&M Wireline's objections to Borison's testimony would be best addressed through cross-examination.

## ARGUMENT

### I. Borison is qualified to render expert testimony on the particular issues before the Court in this case involving a bulk carrier.

In addition to Defendant's allegations from a legal perspective that Borison's testimony should be excluded, Defendant also alleges that Borison lacks the requisite qualifications, background, or expertise to offer the specific opinions offered in this case. Specifically, Defendant alleges that Borison does not have the requisite experience to opine on various duties between a vessel owner, stevedore, and longshoremen in a bulk cargo discharge operation like that in the present matter, as his experience has been centralized in the oil and gas industry. These allegations are simply false. At the outset of his opinion, Borison states that he has over 50 years of safety experience in the marine industries related to, among other things, safety issues on barges and vessels/boats (ship, MODU, tug, tow, supply, crew, etc.).[45] He further states that in forming his opinion, he used widely recognized and accepted accident investigation analysis principles and methods in his investigation and analysis of the accident. Contrary to what Defendants asserts, Borison's testimony is founded on his extensive maritime and marine safety experience and knowledge, which are not limited to the oil and gas industry. Accordingly, Defendant's argument is meritless; and Borsion's background and relevant experience in the maritime industry validly support his opinions in this maritime case concerning the duties of an oceangoing vessel crew to a longshoreman.

[45] *See* May 6, 2021 Expert Report of Robert E. Borison, attached hereto as Exhibit A.

## II. Borison's opinions are reliable, relevant, and helpful to the trier of fact

Defendant also alleges that Borison's opinions are based upon inaccurate, insufficient, and unsupported facts/information; therefore, because of same, his testimony is irrelevant, unreliable, and unhelpful. Notably, many of Defendant's arguments are based upon selective citations to Borison's opinions, his report, deposition testimony and other relevant facts. As previously set forth, Borison references specific facts, testimony, photographic evidence, customs, standards, and circumstances that support his opinion. Specifically, his opinions are supported by the deposition testimony and photographic evidence adduced in this matter to date. Despite Defendant's assertions to the contrary, Melih Ciftci indeed testified that the vessel's crew is supposed to keep the deck clean.[46] Mr. Gusman testified his supervisor asked a member of ship's crew to clean the deck of the urea covering it.[47] The request was ignored,[48] despite Ciftici's testimony that, if a vessel crewmember is asked to clean the deck of loose cargo, the crew member is obliged to do so.[49]

Ciftici also testified that the specific walkway area where Plaintiff fell was supposed to be clean of cargo.[50] When the vessel crew failed to clean the urea from the deck as requested, Plaintiff had no choice but to walk through the loose cargo in order to perform his duties.[51] He was unable to avoid same.[52] Had Mr. Gusman disobeyed his supervisor's order to work, he would have been: (1) fired; (2) taken off the schedule; or (3) sent home.[53] Clearly, Borison's opinion is supported by

46 *See* Excerpts from the deposition of Chief Officer Melih Ciftci, attached hereto as Exhibit B, p.32:18-19; 33:1-14; 53:20-25.
47 *See* Excerpts from deposition of Lloyd Gusman, attached hereto as Exhibit C, p. 96:7-25.
48 *See* Excerpts from deposition of Lloyd Gusman, attached hereto as Exhibit C, p. 96:7-25.
49 *See* Excerpts from the deposition of Chief Officer Melih Ciftci, attached hereto as Exhibit B, p.57:16-25.
50 *See* Excerpts from the deposition of Chief Officer Melih Ciftci, attached hereto as Exhibit B, p.55:2-23 and Exhibit 1 thereof.
51 *See* Excerpts from the deposition of Roy Brupbacher, attached hereto as Exhibit D, p. 24-25.
52 *See* Excerpts from the deposition of Roy Brupbacher, attached hereto as Exhibit D, p. 24-25.
53 *See* Excerpts from the deposition of DeJaunte Murray attached hereto as Exhibit E, p. 15-16.

accurate and sufficient testimony, which negates Defendant's assertion that his opinion is wholly unreliable and erroneous.

### III. Borison's opinions are helpful to the trier of fact and do not only deal with common sense issues or legal conclusions as Defendant alleges

Defendant alleges that this is a generic slip-and-fall case that happened to occur on a vessel and that Borison's opinions deal with common sense issues and are premised wholly on his interpretation of Defendant's supposed duties to Plaintiff. While this matter does involve a slip-and-fall that occurred on a vessel, Defendant ignores the fact that vessels and their crews are charged with specific duties and operate according to customary standards in the maritime industry when it comes to the discharge of cargo operations and their responsibilities to stevedores working to do same. Borison is not merely stating conclusions of law as Defendant alleges.

While Defendant lists various cases that involve "common sense" issues wherein Courts have found that Borison's opinions were not needed. Contrarily, Courts have also found Borison's testimony to be admissible and helpful to the trier of fact on numerous occasions as his opinions hinge on what is customary in the maritime industry.

In *Paster v. Ingram Barge Co.*, 2015 WL 3680700 (E.D. La. 2015), defendant Ingram Barge Company filed a motion in limine to exclude the expert testimony of Robert Borison. Plaintiff Tommy Paster alleged that he was injured while working as a deckhand aboard the M/V O.A. FRANKS, a vessel owned and operated by defendant.[54] According to the plaintiff, he felt a "twinge" in his back while lifting equipment from a tugboat up to the deck of an adjacent barge.[55] More specifically, plaintiff alleged that he was standing on the edge of the barge and used a three- to four-foot pole with a hook attached to grab equipment from the deck of a tugboat located several

---

[54] *Paster v. Ingram Barge Co.*, 2015 WL 3680700 (E.D. La. 2015).
[55] *Id.*

feet below him. [56] Once he had the equipment hooked, plaintiff pulled the equipment up several feet to the deck of the barge. [57] Plaintiff stated that he was able to finish his duties that day but awoke the following day with pain radiating from his back down his leg. [58] Plaintiff filed suit against defendant alleging that the unseaworthiness of the M/V O.A. FRANKS and defendant's negligence caused his injuries. [59] In support of his claim, plaintiff offered the expert report of Robert Borison, purporting to "describe[ ] the accident that occurred aboard a tow of the M/V Capt. O.A. FRANKS ... and present findings on factors that may have contributed to the injuries sustained." [60] Borison opined that three "problems" with defendant's workplace safety practices caused plaintiff's injuries. [61]

Defendant first argued that all three of Borison's opinions were within the scope of the jury's common experience and are thus unhelpful; however, the Court found that Borison's proposed testimony was not within the scope of the fact finder's common experience. [62] The Court determined that Borison evaluated the specific posture plaintiff allegedly assumed and opined that defendant failed to provide the necessary manpower or mechanical assistance to allow plaintiff to make the lift safely noting that Borison was undoubtedly more familiar with the tools plaintiff was using, the equipment plaintiff was lifting, and the safety risks associated with working on barges than the average person. [63] The Court also found that Borison was qualified to opine about the appropriate or customary level of training in the maritime industry. [64] Accordingly, Borison's experience and specialized knowledge regarding maritime safety and industry custom would

---

[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*

assist the trier of fact in determining whether defendant's conduct fell beneath the applicable standard of care.[65]

Further, as previously discussed, in *Matter of M& M Wireline & Offshore Services, LLC*, Borison's testimony was found to aid the factfinder in resolving the dispute,[66] and in *Lewis v. Chet Morrison Contractors, LLC*, the Court found that Borison's testimony as a safety expert involving a plaintiff tripping on a catwalk of a barge would assist the factfinder and was thus admissible pursuant to Rule 702.[67] Additionally, in *Suazo v. Atlantic Sounding Co., Inc.*, 2009 WL 3254446 (E.D. La. 2009), the Court found that Defendant's maritime safety expert's testimony was relevant and admissible to the extent said testimony explains customary industry practices and safety considerations.[68]

## IV. Borison's opinions are in line with controlling jurisprudence regarding a vessel owner's duties to a longshoreman

Defendant's final attempt in persuading the Court that Borison's testimony should be excluded rests on the ultimate legal conclusion in this matter, i.e. whether Defendant, as owner of the vessel, owed a duty to Plaintiff. Indeed, Title 33 Section 905(b) ("905(b)") of the United States

---

[65] *Id.* citing *Roy v. Fla. Mar. Transporters, Inc.*, Civ. A. No. 03–1195, 2004 WL 551208, at *4 (E.D.La. Mar. 18, 2004) (admitting Borison's expert testimony because "[t]he Court finds that testimony on industry safety standards that govern work from elevated platforms may assist the Court in this matter"); *McMullen v. BP Exploration & Prod.*, Civ. A. No. 12–1206, 2013 WL 2556032, at *7 (E.D. La. June 10, 2013) ("While a jury may be familiar with slippery surfaces and the safety of moving heavy equipment, issues of ergonomic and biomechanic safety are far less intuitive and are based on more technical information."); *McDowell v. Atl. Sounding Co., Inc.*, Civ. A. No. 11–1879, 2012 WL 1656262, at *2 (E.D.La. May 10, 2012) ("Neither the safe operation of a pneumatic impact wrench ... nor the safety issues or industry standards implicated by an operation like the one undertaken by plaintiff are 'common sense' issues with which the Court is readily familiar, and Mr. Borison's specialized knowledge and experience in the area of marine safety will help shed light on these issues.").

[66] *Matter of M& M Wireline & Offshore Services, LLC*, 2017 WL 4806032017 (E.D. La. 2/3/17).

[67] 959 F. Supp. 2d 962 (E.D. La. 2013) (Brown, J.) (citing *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)).

[68] *Suazo v. Atlantic Sounding Co., Inc.*, 2009 WL 3254446 (E.D. La. 2009) citing *Parker v. Diamond Offshore Co.*, 2006 WL 861185, *2 (E.D.La. Mar. 23, 2006); *Johnson v. Cenac Towing*, 2006 WL 5499506, *3 (E.D.La. Nov. 21, 2006); *Roy v. Florida Marine Transporters, Inc.*, 2004 WL 551209, *4 (E.D.La. Mar. 18, 2004)("The Court finds that testimony on industry safety standards ... may assist the Court in this matter."); *Grissom v. Seal Fleet, Inc.*, 1997 WL 644090, *2 (E.D.La. Oct. 17, 1997).

Code permits an injured employee to file an action for damages in the event that said damages were the result of "vessel negligence." The United States Supreme Court specifically set forth a shipowner's duties as it relates to Section 905(b) claims in *Scindia Steam Nav. Co., Ltd. v. De Los Santos*.[69] Since *Scindia*, courts commonly summarize a shipowner's duties as (1) the turnover duty; (2) the active control and active operations duty; and (3) the duty to intervene.[70] The only *Scindia* duties at issue in the present matter are the active control duty and the duty to intervene, which are discussed in depth in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, which has been filed with this Court.

Further, "The Court in *Scindia* suggested that positive law, custom, and contract may supplement a shipowner's duties to longshore workers."[71] "***[C]ustomary practice may suggest that a shipowner should know that longshore workers frequently confront rather than avoid a type of obvious hazard.***"[72] "If so, the shipowner may be negligent in not eliminating the hazard, although Plaintiff's recovery may be reduced according to his or her comparative fault."[73]

In support of its position, Defendant glosses over the aforementioned duties it owed to Plaintiff, asserting instead that Plaintiff's employer had the primary responsibility for Plaintiff's safety and that Borison attempts to impute those duties to Defendant. Defendant is clearly misrepresenting Borison's opinion. As this Court is well-aware and contrary to Defendant's assertions, "a vessel owner may be liable under *Scindia's* active control duty if it actively involves itself in cargo operations or fails to protect contractors from hazards in areas under the active

---

[69] *Pimental v. LTD Canadian Pacific Bul*, 965 F.2d 13, 16 (5th Cir.1992) citing *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981)
[70] *Mason Gulf, L.L.C v. Modern American Recycling Service, Inc.*, No. 17-30007, Pg. 4 (5th Cir. 12/18/2017) (citing *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391 (5th Cir. 2008)).
[71] *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 at 1031 (5th Cir. 1986) (citing *Scindia*, 451 U.S. at 172, 176, 101 S.Ct. at 1624, 1626).
[72] *Id*. (emphasis added).
[73] *Id*. (citing *Griffith v. Wheeling-Pittsburgh Steel Corp*., 657 F.2d, 27-28 (3rd Cir. 1981) (shipowner who should have known that plaintiff might use negligent method to remove stuck hatch covers was itself negligent)).

control of the vessel."[74] Pursuant to the active control duty, "'[t]he vessel has a duty to 'exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.'"[75] "Liability under the active control duty 'is not relieved when the hazard is open and obvious.'"[76] "[L]iability under the active control duty is premised on the presence or existence of a 'hazard' under the active control of the vessel."[77] "To determine whether an area is in the active control of the vessel owner, [the Fifth Circuit] generally considers whether the area in question is within the contractor's work area and whether the work area has been 'turned over' to the contractor.[78] *Fontenot v. U.S.*, 89 F.3d 205, 119 A.M.C. 2472 (5th Cir. 1996). Of particular importance, Fifth Circuit jurisprudence provides that a vessel owner maintains active control of a work area, and therefore is subject to the active control duty, ***when it retains the obligation to clean the vessel's deck during operations***.[79] Although the Kiran's crew was asked to clear the loose urea from the ship's deck at the time of the subject accident, "[p]recedent has not required the longshoreman… to request remedial action in order to recover from the shipowner for injuries due to a dangerous condition within the shipowner's control."[80]

The vessel owner also has a duty to intervene in the stevedore's operations when he has actual knowledge both of the hazardous condition and that the stevedore, in the exercise of 'obviously improvident' judgment, intends to continue work in spite of that condition.[81] The duty

---

[74] *Fontenot v. McCall's Boat Rentals, Inc.*, 227 Fed.Appx. 397, 403, 2007 WL 1428985 (5th Cir. 2007).
[75] *Kitchens v. Stolt Tankers B.V.*, 657 Fed. Apps. 248, 251 (5th Cir. 2016) (quoting *Pimental v. LTD Canadian Pacific Bul*, 965 F.2d 13, 15 (5th Cir. 1992) (quoting *Scindia*, 451 U.S. at 167, 101 S.Ct. 1614)).
[76] *Id.* (citation omitted); *see also Romero v. Cajun Stabilizing Boats, Inc.*, 307 Fed.Appx. 849, 851 (5th Cir. 2009).
[77] *Kitchens*, 657 Fed.Appx. at 251 (citing *Pimental*, 965 F.2d at 16).
[78] *Fontenot*, 227 Fed.Appx. at 403 (references omitted).
[79] *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir. 1986) (finding that the district court correctly found vessel owner negligent because the owner "***continued to control the work area, retaining the obligation to clean the… deck***.") (emphasis added)).
[80] *Id.* at 535-36 (citing *Walker v. Blacksea S.S. Co.*, 637 F.2d 287, 288 (5th Cir. 1981)).
[81] *Gay v. Barge 266*, 915 F.2d 1007 (5th Cir.1990)

to intervene requires that the vessel owner "(1)… had actual knowledge that the [defect] posed an unreasonable risk of harm and (2) actual knowledge that it could not rely on the stevedore to protect its employees and that if unremedied the condition posed a substantial risk of injury."[82]

Lastly, despite Defendant's allegations, "'the shipowner has no defense that [a] hazard was so 'open and obvious' to the longshoreman that he either was contributorily negligent or assumed the risk of the hazard by continuing to work.'"[83] "'This is so because when faced with an openly dangerous shipboard condition, the longshoreman's 'only alternatives would be to leave his job or face trouble for delaying work.''"[84] "'In short, 'a longshoreman's own knowledge of a shipboard hazard ***will not negate a shipowner's duty of care which would exist otherwise***.''"[85] "[I]f a hazard is obvious yet practically unavoidable, the shipowner can hardly reasonably expect the stevedore or the longshore worker to avoid the hazard."[86] "Frequently, this question is one of degree, for the standard is not whether it was absolutely impossible to avoid the hazard, but whether, under all circumstances, safer alternatives were practical."[87] A "longshoreman need not show that he had no possible alternative but… only that the circumstances made safer alternatives unduly impractical or time-consuming."[88] "Moreover, there may be cases where the shipowner cannot reasonably expect that a stevedore (and its employees) will avoid an obvious hazard even when practical to do so."[89] "The Court in *Scindia* suggested that positive law, custom, and contract may

---

[82] *Fontenot*, 227 Fed.Appx. at 404 (citing *Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 216 (5th Cir. 1984); *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1249 (5th Cir. 1997); *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 29 (5th Cir. 1996)).
[83] *Theriot*, 783 F.2d at 536 (quoting *Stass v. American Commercial Lines, Inc.*, 720 F.2d 879, 882 (5th Cir. 1983) (citations omitted)).
[84] *Id*. (quoting *Stass v. American Commercial Lines, Inc.*, 720 F.2d 879, 882 (5th Cir. 1983) (citations omitted)).
[85] *Id*. (quoting *Stass v. American Commercial Lines, Inc.*, 720 F.2d 879, 882 (5th Cir. 1983) (citations omitted)).
[86] *Id*. (emphasis added).
[87] *Id*. (emphasis added).
[88] *Id*. (quoting *Morris v. Compagnie Maritime des Chargeurs Reunis, S.A.*, 832 F.2d 67, 71 (5th Cir. 1987)).
[89] *Id*. at 1030-31.

supplement a shipowner's duties to longshore workers."[90] "***[C]ustomary practice may suggest that a shipowner should know that longshore workers frequently confront rather than avoid a type of obvious hazard.***"[91] "If so, the shipowner may be negligent in not eliminating the hazard, although Plaintiff's recovery may be reduced according to his or her comparative fault."[92]

In reaching his opinions in this matter, Borison relied on all of the aforementioned duties as well as what is customary and standard in the maritime industry. Contrary to Defendant's assertions, the jurisprudence demonstrates that Borison's conclusions are indeed not contrary to established legal principles. Rather, they are in line with the applicable jurisprudence at issue in this case, rendering them both reliable and admissible pursuant to Rule 702.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied. With his extensive (over 50 years) safety experience in the marine industries related to, among other things, safety issues on barges and vessels/boats (ship, MODU, tug, tow, supply, crew, etc.),[93] Robert Borison is clearly qualified to render the opinions he offered in this case. He has used widely recognized and accepted accident investigation analysis principles and methods in his investigation and analysis of the accident, rendering his opinions both reliable and relevant. Borison's opinions are also appropriately premised on both Defendant's duty to Plaintiff in accordance with controlling jurisprudence, what is customary and standard in the maritime industry, and the testimony provided in this matter to date. Accordingly, Robert Borison's opinions and testimony are

---

[90] *Id*. at 1031 (citing *Scindia*, 451 U.S. at 172, 176, 101 S.Ct. at 1624, 1626).
[91] *Id*. (emphasis added).
[92] *Id*. (citing *Griffith v. Wheeling-Pittsburgh Steel Corp*., 657 F.2d, 27-28 (3rd Cir. 1981) (shipowner who should have known that plaintiff might use negligent method to remove stuck hatch covers was itself negligent)).
[93] *See* May 6, 2021 Expert Report of Robert E. Borison, attached hereto as Exhibit A.

admissible under Rule 702; and Plaintiff, Lloyd J. Gusman, Jr., respectfully prays this Court deny the present Motion.

Respectfully submitted,

**LEWIS & CAPLAN**

A PROFESSIONAL LAW CORP.

*/s/ Barrett R. Stephens*

**BARRETT R. STEPHENS** (#31331)
3631 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 486-7766
Fax: (504) 486-7769
Email: brs@lewis-caplan.com
Counsel for Claimant

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of July, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for all parties to this proceeding.

*/s/ Barrett R. Stephens*

**BARRETT R. STEPHENS**