UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LLOYD J. GUSMAN, JR.**                        **CIVIL ACTION**

**VERSUS**                                          **No. 20-984**

**ARCHER SHIPPING, LTD, ET AL.**               **SECTION I**

**ORDER & REASONS**

Before the Court is defendant Archer Shipping, Ltd.'s ("Archer") motion[1] *in limine* to exclude the testimony of plaintiff Lloyd J. Gusman, Jr.'s proposed liability expert, Robert E. Borison, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Gusman opposes[2] the motion and Archer submitted a reply[3] in support of the motion. For the reasons that follow, Archer's motion is granted in part and denied in part.

**I.**

This case arises from injuries Gusman allegedly suffered during an April 2, 2019 accident aboard the KIRAN BOSPHORUS (the "Bosphorus").[4] Because of the limited nature of this order, the Court will review only those facts necessary to set forth its ruling; a more thorough summary may be found in the Court's recently issued order denying summary judgment.

Gusman intends to call Borison, the President of Total Safety Services, Inc., to offer expert testimony Gusman believes will be helpful to establish Archer's liability.

---

[1] R. Doc. No. 47.
[2] R. Doc. No. 49.
[3] R. Doc. No. 54.
[4] R. Doc. No. 47-1, at 2, 4.

1

Generally, Gusman argues that Borison's "extensive maritime and marine safety experience and knowledge" will aid the Court in its factfinding.[5]

In his report, Borison offers three opinions:

1. The Bosphorus's Chief Officer failed to establish a protocol for the unloading of the ship's hatches and completing housekeeping priorities relating to the deck.
2. The Bosphorus's supervisors failed to clean the ship's deck or have it cleaned before Gusman and his colleagues boarded.
3. The Bosphorus's supervisors, as well as the C/B ELISA A's (the "crane ship") supervisors,[6] should have used their 'stop work' authority when the presence of a hazard on the deck was identified.[7]

In relevant part, Archer argues that exclusion is warranted because Borison (1) is unqualified to render his opinions due to a lack of experience and (2) "relays incorrect and/or inconsistent facts" in his report.

## II.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides that a witness who is "qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if" (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of

---

[5] R. Doc. No. 49, at 1.
[6] The crane ship was used in the unloading process.
[7] R. Doc. No. 47-2, at 6–11.

reliable principles and methods; and" (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

As an initial matter, the Fifth Circuit has "noted that the importance of the trial court's gatekeeper role is significantly diminished in bench trials, as in this instance, because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)). And courts have taken this point into consideration when denying *Daubert* motions filed before bench trials. *See, e.g.*, *Trevelyn Enters., L.L.C. v. SeaBrook Marine, L.L.C.*, No. 18-11375, 2021 WL 65689, at *2 (E.D. La. Jan. 7, 2021) (Lemmon, J.). But, "[a]lthough the 'gate-keeper' role may be diminished, the Court is still required to perform its gate-keeping function." *United States v. E.R.R. LLC*, No. 19-2340, 2020 WL 2769881, at *3 (E.D. La. May 28, 2020) (Fallon, J.) (citing *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748 (7th Cir. 2010)).

"To qualify as an expert, 'the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)) (internal alterations omitted). "Additionally, Rule 702 states that an expert may be qualified based on 'knowledge, skill, experience, training, or education[.]'" *Id.* at 524; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (discussing witnesses whose expertise is based purely on experience).

3

"A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Henderson v. Atmos Energy*, 496 F. Supp. 3d 1011, 1015 (E.D. La. 2020) (Africk, J.) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). "However, 'Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* at 1015–16 (quoting *Huss*, 571 F.3d at 452).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147. When expert testimony is challenged under Rule 702 and *Daubert*, the burden rests with the party seeking to present the testimony. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique can be or has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant

4

scientific community. *See Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (emphasis omitted) (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

Proposed expert testimony must be relevant "not simply in the [way] all testimony must be relevant [pursuant to Rule 401], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

> There is no more certain test for determining when experts may be used than the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*Vogler v. Blackmore*, 352 F.3d 150, 155 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules). In other words, expert testimony is unnecessary where a jury can "adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

5

## III.

The Court first addresses (and rejects) Archer's argument that "Borison lacks the requisite experience to opine on a bulk carrier vessel crew's duties" because "his experience has been centralized in the oil and gas industry."[8] Borison's report notes that he has "over 50 years of safety experience in the industries relating to the exploration, production, and transport of oil and gas and the marine, general, and commercial industries" and that he has "developed expertise relating to safety issues on . . . vessels/boats."[9]

Archer argues, at bottom, that while Borison has extensive experience as a safety expert in the maritime industry, he lacks experience with the precise procedures at issue here. In essence, Archer would impose a rule of specificity for experts. But that would be at odds with Fifth Circuit's precedent. *See, e.g.*, *Huss*, 571 F.3d at 452. More importantly, though, Archer offers no authority to apply such an exacting standard to a bench trial. Archer is free to cross-examine Borison about his expertise and, if it feels the information elucidated on cross-examination supports it, re-urge its motion to exclude him; there will be no jury to be tainted by the excluded testimony.

Second, the Court rejects Archer's argument that Borison should be excluded because his opinions rest on incorrect or contradicted facts. "*Daubert* motions primarily based on attacks concerning the underlying facts are less than compelling in the context of a non-jury trial such as this." *Carter v. Hornbeck Offshore Transp.,*

---

[8] R. Doc. No. 47-1, at 11–12.
[9] R. Doc. No. 47-2, at 2.

*LLC*, No. 12-1545, 2014 WL 2898458, at *1 (E.D. La. June 26, 2014) (Duval, J.). Furthermore, "the reliability of data underlying an expert's opinion goes to the weight of this evidence, but should not serve as a basis for its exclusion." *St. Joseph Abbey v. Castille*, No. 10-2717, 2011 WL 2182046, at *1 (E.D. La. June 3, 2011) (Duval, J.) (alteration and quotation omitted) (citing *Tyler v. Union Oil. Co. of Cal.*, 304 F.3d 379, 392–93 (5th Cir. 2002)). Again, Archer will have ample opportunity to cross-examine Borison at this bench trial.

Third, even in the context of a bench trial, the Court sees no reason Borison should be allowed to offer an 'expert opinion' that the Bosphorus's officers failed to clean the deck or have it cleaned prior to the accident. If Gusman proves that the deck was in fact covered in urea (a fact that does not presently seem to be disputed), then he will have proved the substance of Borison's opinion.

And even if Archer seeks to prove that the Bosphorus's crew in fact cleaned the deck prior to the accident, the Court sees no way Borison's expertise can aid in its resolution of the issue. Either the deck was covered in urea or it was not. If it was, the Bosphorus's crew either cleaned it before it was re-coated or they did not. These are simple factual questions. The Court knows its limitations, but it is confident it can "adeptly assess [the] situation using only [its] common experience and knowledge." *Peters*, 898 F.2d at 450.

## IV.

The Court rejects Archer's attacks on Borison's testimony. But his second opinion will not aid the Court in any way, so it is inadmissible. Accordingly,

**IT IS ORDERED** that the motion to exclude Borison's testimony is **GRANTED IN PART** and **DENIED IN PART**. Borison may not offer his second opinion at trial. He is free to testify to his other opinions, though Archer may re-urge its motion following his testimony if it chooses to do so.

New Orleans, Louisiana, August 6, 2021.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**