UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLOYD J. GUSMAN, JR.** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-984** |
| **ARCHER SHIPPING, LTD., ET AL.** | **SECTION I** |

**ORDER & REASONS**

Before the Court is defendant Archer Shipping Ltd.'s ("Archer") motion[1] for summary judgment as to plaintiff Lloyd J. Gusman Jr.'s negligence claims against it. Gusman opposes the motion.[2] Archer and Gusman also filed a reply[3] and a surreply,[4] respectively.

On April 2, 2019, Gusman boarded the Kiran Bosphorus (the "Bosphorus") while working as a longshoreman for Coastal Cargo Company ("Coastal"), a stevedoring company engaged in unloading the Bosphorus's bulk cargo of urea pellets. During the operation, a number of urea pellets spilled from the bucket being used to unload them onto the deck of the Bosphorus. Sometime thereafter, Gusman boarded to carry out his responsibilities and allegedly, a few minutes later, slipped and fell on loose urea, injuring himself. Gusman subsequently sued Archer, the Bosphorus's owner, seeking damages for vessel negligence under 33 U.S.C. § 905(b).

---

[1] R. Doc. No. 46.
[2] R. Doc. No. 48.
[3] R. Doc. No. 53.
[4] R. Doc. No. 57.

Generally, Archer argues that "the uncontested facts establish that . . . there was no unreasonable hazard present," precluding liability.[5] Archer also argues that, assuming there *was* an unreasonable hazard present, the facts still preclude liability under the narrow theories afforded such lawsuits by *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981). As explained *infra*, the Court concludes that summary judgment is inappropriate and denies the motion.[6]

## I.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. Proc. 56. "[A] party

---

[5] R. Doc. No. 46-1, at 1.

[6] In its reply, Archer argues that Gusman's statement of contested material facts, R. Doc. No. 48-1, submitted in compliance with Local Rule 56.2, failed to adequately address a host of 'undisputed material facts' raised in Archer's statement, R. Doc. No. 46-2, and that these facts are accordingly deemed undisputed. R. Doc. No. 53, at 1–3. Notably, Archer asks the Court to find that facts which Gusman "disputed as 'material'" were not adequately "disputed or controverted," and should therefore be admitted. *See id.* at 1, 1 n.2. Archer also complains that Gusman "does not actually dispute" a number of its 'facts,' but instead "attempts to argue around them." *Id.* at 1.

The Court rejects this effort to transform Local Rule 56.2 into a cudgel. The rule states that material facts listed in a movant's statement will be deemed admitted for purposes of the motion "unless controverted" in the non-movant's statement. It does not set forth a pleading standard by which the non-movant's statement is to be evaluated. Moreover, a number of Archer's 'material facts' are little more than legal conclusions couched in the context of the dispute. *See, e.g., id.* at 2 ("The ship's crew did not have any supervisory control over the Coastal crew when it came to the actual cargo discharge methods."). Between Gusman's statement and the substance of his opposition, the Court sees no 'uncontested facts' that mandate a grant of summary judgment. *See, e.g., Oiler v. Biomet Orthopedics, Inc.*, No. 02-3778, 2004 WL 325389, at *1 n.2 (E.D. La. Feb. 17, 2004) (Africk, J.) (declining to deem facts admitted despite failure to comply with rule where the plaintiff's opposition suggested dispute).

seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence[.]" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore*

*Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

## II.

The parties agree that general principles of tort law apply to Gusman's maritime tort claim.⁷ And, as noted, Archer's primary argument is that a § 905(b) plaintiff can never recover absent an unreasonable danger, and no unreasonable danger existed, ending matters.⁸ But Archer's citation to precedent in support of this argument is, at best, unpersuasive. To wit: Archer suggests that *Wilson v. Solomon Corp.*, No. 97-960, 1997 WL 348142, at *2–*3 (E.D. La. June 19, 1997) (McNamara, J.) stands for the proposition that "the absence of an *unreasonable* risk of harm precludes liability in" the instant case.⁹ But the cited portion of *Wilson* states only that the absence of "an unreasonable risk of harm" is a bar to liability under what it describes as "the second part of *Scindia*"—a clear reference to duty to intervene.¹⁰ *Id.* at *2. *Wilson*'s analysis of the turnover duty makes *no* reference to a similar requirement, instead describing an owner's duty to exercise ordinary care and its

---

⁷ *See* R. Doc. No. 46-1, at 12 (Archer); R. Doc. No. 48, at 9 (Gusman).
⁸ *See, e.g.*, R. Doc. No. 46-1, at 12.
⁹ *Id.* at 12 (emphasis retained).
¹⁰ As noted *infra*, the existence of an unreasonable risk is undoubtedly an element of a 'duty to intervene' claim.

4

duty to warn. *Id.* That indicates Archer's interpretation of *Wilson* is, perhaps, overbroad.

But even assuming *arguendo* that Archer's legal argument is correct, a genuine dispute of material fact exists, rendering summary judgment on the point inappropriate.

In support of its contention that the risk posed by the loose urea pellets on the deck cannot have been unreasonable, Archer cites deposition testimony suggesting that (1) the condition of the deck was typical for removal of urea by crane;[11] and (2) a non-slip walkway existed which Gusman could have used to accomplish his work.[12]

But, "[g]enerally, the question of negligence in a maritime case is a question of fact for the" factfinder. *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990) (gathering cases and concluding that disputed questions of fact existed as to whether a damaged gangway created an unreasonable risk of harm). And ample record evidence supports a finding that the risk was unreasonable. As an initial matter, testimony exists that the "majority" of the deck on which Gusman was working was covered by pelleted urea,[13] which is "very slippery."[14] One of Gusman's colleagues described the Bosphorus's deck as "real accident-prone for someone to get hurt"

---

[11] R. Doc. No. 46-1, at 14 (quoting R. Doc. No. 46-3, at 56, deposition testimony of Coastal supervisor Roy Brupbacher).
[12] *Id.* (quoting R. Doc. No. 46-3, at 35–36, deposition testimony of the Bosphorus's Chief Officer).
[13] R. Doc. No. 48-6, at 6 (Brupbacher deposition); *see also* R. Doc. No. 48-9 (photograph of the deck).
[14] *Id.* at 8.

because of the urea.[15] And, while a Coastal supervisor testified that the Bosphorus's deck looked "like a typical deck whenever you're working urea,"[16] he also noted that Coastal "foremen are instructed to make sure that nobody walks [on the urea] and make sure they get it clear before [they] have to do the shifting of any lines."[17]

The existence in the record of facts suggesting the urea did not pose an unreasonable risk is irrelevant at the summary judgment stage. A genuine dispute of material fact exists and a factfinder could reasonably conclude that the urea presented an unreasonable risk. That dispute is enough to preclude summary judgment on those grounds.

### III.

Under *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981), which the parties agree applies here, stevedore employees "retain the ability to bring third-party [tort] suits against vessel owners." *Landry v. G.C. Constructors*, 514 F. App'x 432, 435 (5th Cir. 2013). But the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*, significantly limits a vessel owner's duties to these longshoremen. Specifically, "[v]essel owners . . . have responsibility for fulfilling three, limited duties: the 'Turnover Duty,' the 'Active–Control Duty,' and the 'Duty to Intervene.'" *Landry*, 514 F. App'x at 435 (citing *Scindia*, 451 U.S. at 164–76). Gusman's lawsuit implicates only the latter two duties.

---

[15] R. Doc. No. 48-7, at 2 (DeJuante Murray deposition).
[16] R. Doc. No. 46-3, at 56.
[17] R. Doc. No. 48-6, at 15–16. Gusman was tasked with shifting the lines connecting the Bosphorus and a floating crane barge.

As noted, Archer also argues that Gusman cannot succeed under either. The Court addresses those arguments in turn.

Active-Control Duty

"The 'Active–Control Duty' makes a vessel owner liable for injuries that arise out of its attempts to 'actively involve[] itself in [stevedoring] operations.'" *Id.* (quoting *Scindia*, 451 U.S. at 167) (alterations in original). "Similarly, 'even where the vessel [owner] does not actively involve itself in the stevedoring operations, it may be liable if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the *active control of the vessel* during the stevedoring operation.'" *Id.* (quoting *Gravatt v. City of New York*, 226 F.3d 108, 121 (2d Cir. 2000) (internal quotation omitted)) (alterations in original). Absent such control, though, "[o]nce stevedoring or repair operations have begun, it is the *stevedore*, not the shipowner, who assumes the responsibility for the safety of its employees." *Id.* (quoting *Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 215–16 (5th Cir. 1984)) (alterations in original).

Archer argues that 'active control' equates to operational control,[18] and that summary judgment is appropriate, *inter alia*, because Coastal was using its own equipment and supervising Gusman.

In response, Gusman argues that Archer in fact maintained active control over the unloading operation in the context of his injury because record evidence indicates

---

[18] R. Doc. No. 46-1, at 15–16 (citing *Fontenot v. McCall's Boat Rentals, Inc.*, 277 F. App'x 397, 403–404 (5th Cir. 2007)).

7

that Archer retained responsibility for cleaning the deck during the unloading process and "Fifth Circuit jurisprudence provides that a vessel owner maintains active control of the work area, and therefore is subject to the active control duty, when it retains the obligation to clean the vessel's deck during operations."[19]

Though Archer argued in response that Gusman mischaracterized *Theriot*, the Court concludes that more than enough evidence exists to raise a genuine dispute of material fact as to whether Archer controlled the area when Gusman was injured. Gusman's co-worker and the Coastal supervisor both testified that the Bosphorus's crew was responsible for cleaning the deck during the unloading operation.[20] Moreover, the Bosphorus's chief officer confirmed that he and relief officers were "actually aboard" the ship during the unloading, "working hand in hand with the cargo crew,"[21] *and "that the ship's crew is responsible for clearing the deck" during the operation.*[22] The officer went beyond that, confirming that he "ordered [his crew] that . . . when you find time, just keep the deck clean."[23] Evidence indicating that the Coastal crew repeatedly attempted to have the Bosphorus's crew clean up the

---

[19] R. Doc. No. 48, at 11 (quoting *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir. 1986)) (emphasis omitted).
[20] *See, e.g.*, R. Doc. No. 48-6, at 5, 7 (Brupbacher's testimony that "it's the ship's crew['s responsibility] to make sure that the deck is clear during operations" and that the spilled urea "should have been cleared before they started pulling wires"); R. Doc. No. 48-7, at 4 (Murray's testimony that "[t]he shipmate" (a Bosphorus crewmember) was responsible for cleaning loose cargo off the deck in between wire shifts).
[21] R. Doc. No. 48-5, at 3.
[22] *Id.* at 7 (emphasis added).
[23] *Id.* at 9.

deck, rather than cleaning it themselves, offers further support a factfinder might lean on to conclude that Archer actually controlled this aspect of the operation.[24]

In *Theriot*, the Fifth Circuit noted that the vessel owner "continued to control the work area, retaining the obligation to clean the . . . deck." 783 F.2d at 535. It affirmed the district court's finding of negligence on an active-control theory, notwithstanding the fact that the longshoreman "did not request any remedial

---

[24] *See, e.g.*, R. Doc. No. 48-7, at 6 (recounting the Coastal team's efforts to have the problem remedied).

In a reply, Archer argues that any reference to "the alleged 'request' to clean the deck constitutes hearsay" and is therefore inappropriate summary judgment evidence. R. Doc. No. 53, at 9–10. "Testimony offered to prove that [a] party had knowledge or notice is not hearsay because 'the value of the statement does not rest upon the declarant's credibility and, therefore, is not subject to attack as hearsay.'" *In re Morrison*, 555 F.3d 473, 483 (5th Cir. 2009) (quoting *Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1230 (5th Cir. 1984)) (holding that statement made by Individual A that she heard Individual B tell Individual C about something was not hearsay because it was offered to show that Individual C was aware of the thing); *see also JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc.*, 548 F. App'x 205, 209 (5th Cir. 2013) ("A statement does not fall under the hearsay rule if it was offered, not to prove the truth of the matter asserted, but to prove that the statement was made." (quoting *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1090 (5th Cir. 1988)(alterations omitted)).

Archer insists that this evidence is being offered "for the truth of the matter asserted." R. Doc. No. 53 at 10. That is, at least in relevant part, wrong. Reference by Coastal employees to efforts to communicate the presence of urea on the deck to Bosphorus crewmembers is admissible to demonstrate that Archer heard the statements—and therefore had notice. The statements are also admissible to demonstrate that cleanup was Archer's responsibility because the fact that they were made, regardless of the truth of the content, supports that premise. And because ample other evidence exists as to the urea's presence and hazardous nature, the Court need not analyze whether the statements would be admissible as present sense impressions to prove those points.

9

action" to remedy the hazard, *id.*; Gusman has offered evidence indicating the Coastal crew in the instant case *did exactly that*.

And, despite Archer's argument to the contrary, *Fontenot* supports Gusman's position. In *Fontenot*, the Fifth Circuit affirmed the trial court's finding that the vessel owner's "ret[ention of] the ultimate authority to make decisions" under the parties' contract was insufficient to demonstrate operational control absent evidence of "*active* control over the deck during the . . . operation." 227 F. App'x at 404 (emphasis retained). Here, the Bosphorus's chief officer's testimony, along with the other evidence cited above, raises a genuine dispute of material fact as to just that point. Accordingly, summary judgment is inappropriate as to the active control duty.

<u>Duty to Intervene</u>

"[V]essel owners are subject to the 'Duty to Intervene' when they have 'actual knowledge' of both a hazard on the ship or with its 'equipment' *and* a stevedore's 'improvident' decision to proceed despite the unsafe condition." *Landry*, 514 F. App'x at 435 (quoting *Gravatt*, 226 F.3d at 121) (emphasis in original). "This duty focuses on the vessel owner's knowledge; neither the worker's knowledge of the hazard nor its 'open and obvious' nature 'precludes his recovery.'" *Id.* (quoting *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 167 (5th Cir. 1990)).

Typically, though, "the Duty to Intervene does not arise for 'open and obvious transitory condition[s] . . . that [are] created entirely by the independent contractor, [are] under its control, and relate[d] wholly to its own gear and operations.'" *Id.* at 436 (quoting *Futo*, 742 F.2d at 216) (all but first alteration in original). "A plaintiff

10

must show 'something more' when a contractors' [sic] employees create 'open and obvious' hazardous conditions in an area or with equipment under their exclusive control." *Id.* at 437 (quoting *Futo*, 742 F.2d at 215). "The 'something more' approach has been distilled into a 'six factor test.'" *Id.* at 438 (quoting *Fontenot*, 89 F.3d at 209).

Archer first argues that Gusman "will be unable to show the 'actual knowledge' component" of a Duty to Intervene claim because there was no "unreasonably dangerous condition," and therefore nothing about which Archer could have been aware. R. Doc. No. 46-1, at 21. As discussed above, the Court concludes that there is a genuine dispute of material fact as to the relative unreasonableness[25] of the alleged condition. And there is also record evidence that Gusman and his coworkers communicated their concerns about the deck to members of the Bosphorus's crew.[26] Summary judgment on this ground is therefore inappropriate.

Archer also argues that summary judgment is appropriate, citing *Landry*, 514 F. App'x at 436, because "the alleged hazard . . . of excess urea cargo on the deck was

---

[25] Courts have concluded that the level of unreasonable dangerousness required goes beyond that typically required for a negligence claim. *See, e.g.*, *Johnson v. Cargill, Inc.*, No. 16-16048, 2019 WL 150000, at *3 (E.D. La. Jan. 9, 2019) (Morgan, J.) (concluding that, while a dispute of fact existed as to whether a condition was unreasonably dangerous, that was immaterial because "the condition was not '*so* hazardous that *anyone* can tell that its continued use creates an unreasonable risk of harm'" (quoting *Fontenot*, 227 F. App'x at 405) (emphasis retained)). Accepting that as a proper formulation of the showing required, the Court still concludes summary judgment is inappropriate; there is ample record evidence that urea is dangerous to step on and should be cleaned up. A determination of exactly *how* dangerous is better suited for trial than a motion for summary judgment.
[26] *See, e.g.*, R. Doc. No. 48-8, at 11; R. Doc. No. 48-7, at 6–7.

11

undisputedly created by the stevedore, as it resulted from the ongoing discharge operation that was entirely controlled by the stevedore's operations and created through the use of the stevedore's equipment."[27]  But, as discussed in the Court's analysis of the active-control duty, there is a genuine dispute of material fact as to whether the deck was under the exclusive control of Coastal.  And, to the extent the Bosphorus's crew was responsible for and expected to clean up the deck each time the ship-to-ship wires needed to be unhooked, that responsibility suggests otherwise.  Archer's argument therefore falls short.

Finally, Archer argues that the fallen urea's 'open and obvious' nature precludes recovery, claiming that "an owner's possible knowledge of cargo on the deck carries little influence where [it] presents an obvious and accepted hazard."[28]  The Court finds Archer's reference to *Giganti* confusing.  That case explicitly acknowledged that "[e]ven if an 'obvious danger' is under the principal control of the stevedore, the vessel owner is obligated to intervene" under certain circumstances.  *Giganti*, 997 F. Supp. 2d at 196 (quoting *Gravatt*, 226 F.3d at 121).  Regardless, the argument that the 'open and obvious' nature of the hazard *on its own* precludes recovery is incorrect as a matter of law.  As noted *supra*, *Landry* makes clear that the analysis focuses on the vessel owner's knowledge and that neither Gusman's knowledge nor the urea's open and obvious nature "preclude[] his recovery." *Landry*, 514 F. App'x at 435 (quoting *Treadaway*, 894 F.2d at 167).

---

[27] R. Doc. No. 46-1, at 23–24.
[28] R. Doc. No. 53, at 6 (citing *Giganti v. Polsteam Shipping Co.*, 997 F. Supp. 2d 182, 196–97 (E.D.N.Y. 2013)).

And while Fifth Circuit precedent is clear that a hazard's open and obvious nature makes recovery difficult when it is created with a contractor's equipment in an area under its exclusive control, *see, e.g., id.* at 437, 437 n.3 (discussing and summarizing precedent), the control question here is disputed, rendering that point academic. If and when Archer demonstrates at trial that it did not retain any control over the deck and/or the unloading operations, the urea's obvious nature[29] will be relevant. But it cannot justify summary judgment in these circumstances.

## IV.

As explained *supra*, Archer's arguments that summary judgment is warranted are unconvincing. Furthermore, the Court finds that trial would afford it a better understanding of the facts, reinforcing its conclusion that summary judgment is inappropriate. Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, August 6, 2021.

                                          **LANCE M. AFRICK**
                                  **UNITED STATES DISTRICT JUDGE**

---

[29] Assuming, as the parties seemingly do, that the urea spillage was, in fact, open and obvious.